JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, David Sopko, appeals his rape convictions. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On March 29, 2007, the Cuyahoga County grand jury indicted appellant on 34 counts of rape under R.C. 2907.02(A)(1)(b), all with sexually violent predator specifications under R.C. 2941.148. On April 4, 2007, appellant pleaded not guilty to the indictment.
 {¶ 3} On October 1, 2007, a jury trial began. On October 5, 2007, Counts One, Two, and Three were submitted to the jury, and the remaining 31 counts were nolled. The jury found appellant guilty on Counts One and Three, but not guilty on Count Two.
 {¶ 4} After the jury verdict, the trial judge ordered a presentence investigation and set a sentencing date. On November 7, 2007, the trial court found appellant to be a sexually violent predator and then held a sexual predator hearing, where it found appellant to be a sexual predator. On that same date, the trial court sentenced appellant to two life sentences without parole, to be served concurrently.
 {¶ 5} During the jury trial, the state called several witnesses. From a review of their testimony, we derive the following information. *Page 4 
 {¶ 6} Appellant and H.E.[1] ("the mother") have two children, B.S. (DOB 3/30/00) and T.S. (DOB 2/6/02). Prior to the birth of T.S., the couple separated. Nine months after the birth of T.S., the mother attempted suicide, and the Department of Human Services placed both children with relatives. B.S. went to live with his grandmother, and T.S. went to live with her great aunt S.F. ("the aunt"). Appellant visited each of his children every other week.
 {¶ 7} According to the aunt's testimony, in late 2005 or early 2006, T.S. began visiting appellant more often. The aunt testified that in May 2006, T.S. began touching her own vagina. In October 2006, during her shower, T.S. asked the aunt if she would clean her "like Daddy David does," and T.S. laid down and started touching her vagina. The aunt confronted appellant about this, and appellant asked, "Aren't you supposed to clean out everything?" Appellant agreed to stop washing T.S. at the aunt's request. The aunt also testified that appellant had told her once that he liked to wear diapers during sexual relations.
 {¶ 8} The aunt further testified that T.S.'s behavior continued to change. She would touch her vagina, and she began to attempt to french kiss the aunt, her uncle, and B.S. In early 2007, the aunt contacted Medina Jobs and Family Services social worker, Ana Becker ("the social worker"). On February 6, 2007, the social worker interviewed T.S. As a result of T.S.'s description of appellant's *Page 5 
behavior, the social worker contacted the police. Eventually, T.S. met with North Olmsted Police Detective Kenneth Vagese and the social worker.
 {¶ 9} T.S. testified that appellant would touch her vagina[2] and that he would rub it with his finger, which made her feel "sad." T.S. stated that she closed her eyes during the touching because appellant told her to. T.S. testified that appellant made her wear diapers and no shirt and took pictures of her on the bed. T.S. also saw appellant do this to B.S. T.S. testified that appellant put his finger inside her vagina, which hurt and made her sad.
 {¶ 10} The social worker testified that when she talked to T.S., T.S. told her about appellant's actions. T.S. told her that appellant had put his finger inside her vagina and used his tongue on her vagina. Thereafter, the social worker contacted police. During the first police interview, T.S. felt ill and told the social worker that her mother told her not to talk to police about the situation. Because T.S. felt ill, the interview stopped.
 {¶ 11} At the second interview with the police and the social worker, T.S. explained what appellant did and circled the penis on a body map. T.S. said that she showered with appellant and that he touched her vagina with his penis. T.S. stated that it hurt "only when he pushes it in too hard." As a result of what she learned from T.S., the social worker immediately set up set up a medical *Page 6 
appointment at Akron Children's Care Center and a counseling appointment at Solutions Behavioral Health Care in Brunswick.
 {¶ 12} Det. Vagese testified that, as a result of T.S.'s story, he obtained an arrest warrant for appellant. As a result of information obtained from appellant's friend, Scott Smith, regarding a computer, the police also obtained a search warrant for appellant's home. At appellant's home, Det. Vagese seized a computer, a bin containing diapers and pornographic magazines, and an inflatable doll ("the doll"). According to Det. Vagese, the Internet Crimes Against Children Task Force found no child pornography or photographs of T.S. or B.S. on the computer.
 {¶ 13} Forensic Scientist, Dale Laux, testified that he found sperm on all of the doll's orifices and seminal fluid on the diaper the doll was wearing. Melissa Zielaskiewicz, from the Bureau of Criminal Investigations, testified that DNA found by Laux matched DNA from appellant.
 Review and Analysis {¶ 14} Appellant brings this appeal, asserting eight assignments of error for our review. Because the first, fourth, and fifth assignments of error involve the admission of evidence, we address them first.
 Evidence {¶ 15} It is well established under Evid. R. 104, that the introduction of evidence at trial falls within the sound discretion of the trial court. State v. *Page 7 Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026. Therefore, "an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989), 45 Ohio St.3d 104, 107,543 N.E.2d 1233. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court. See, generally, State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264.Finnerty, supra, at 107-108.
 Confrontation Clause and Hearsay {¶ 16} "I. The trial court erred in violation of the Sixth andFourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination, and Ohio Evidence Rules 801 and 802, when it permitted state witnesses to testify with inadmissible hearsay statements."
 {¶ 17} Appellant argues that the trial court erred when it admitted hearsay statements. More specifically, he alleges that the social worker should not have been permitted to testify regarding what T.S. told her. This argument is without merit because T.S. testified at trial, which provided appellant the opportunity to cross-examine her, and because the social worker's testimony was admissible pursuant to Evid. R. 803(4). *Page 8 
 {¶ 18} As appellant correctly states, the Sixth Amendment to the United States Constitution guarantees all criminal defendants the right to confront the witnesses against them. The Confrontation Clause provides a constitutional safeguard to ensure that a criminal defendant will not be convicted of a crime based on the charges of unseen, unknown, and unchallengeable witnesses. Lee v. Illinois (1986),476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514; State v. Gilliam,70 Ohio St.3d 17, 19, 1994-Ohio-348, 635 N.E.2d 1242.
 {¶ 19} We find that there was no violation of the Confrontation Clause because T.S. testified and was available for cross-examination at trial. See Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct 1354,158 L.Ed.2d 177; State v. Hall, Cuyahoga App. No. 88476, 2007-Ohio-3531.
 {¶ 20} We also find that the testimony was admissible as a hearsay exception. Under Evid. R. 801(C), "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(B) defines "declarant" as a "person who makes a statement"; and a "statement," as defined in Evid. R. 801(A), is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."
 {¶ 21} Hearsay evidence is generally inadmissible, unless an exception is determined to be applicable. Evid. R. 803(4) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or *Page 9 
past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are an exception to the hearsay rule.
 {¶ 22} In child abuse cases, testimony is admissible, even from non-medical personnel under Evid. R. 803(4), as long as those statements were made in the course of physical or psychological treatment.State v. McWhite (1991), 73 Ohio App.3d 323, 597 N.E.2d 168. Further, this court has specifically held that statements of young rape victims made to social workers are admissible under Evid. R. 803(4). State v.Kurpik, Cuyahoga App. No. 80468, 2002-Ohio-3260. However, the statements made to a social worker must be for diagnosis or treatment. State v.Chappell (1994), 97 Ohio App.3d 515, 646 N.E.2d 1191.
 {¶ 23} T.S.'s statements to the social worker resulted in a referral to Akron Children's Care Center and Solutions Behavioral Health Care; therefore, we find that the statements were clearly for the purposes of diagnosis and treatment and are admissible under Evid. R. 803(4). In addition, they were admissible even though a detective was present when the statements were made to the social worker. See Hall, supra. Accordingly, appellant's first assignment of error is overruled.
 "Other Acts" Testimony *Page 10 {¶ 24} "IV. The trial court erred and deprived Appellant of a fair trial when it allowed other acts testimony whose prejudicial effect outweighs its probative value."
 {¶ 25} Appellant argues that the trial court erred when it admitted "other acts" testimony. He specifically alleges that testimony regarding the doll and the DNA found inside it was inappropriate. This argument is without merit.
 {¶ 26} We note that the appellant failed to object to this testimony; therefore, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16.
 {¶ 27} Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell,75 Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v.Phillips, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 28} Under Evid. R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith; [however,] it may be admissible for other purposes, such *Page 11 
as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 29} Here, the trial judge allowed Det. Vagese to testify about the doll, which was wearing a diaper. The trial judge also allowed Forensic Scientist Laux to testify that he found sperm on the doll's orifices and seminal fluid on the diaper the doll was wearing. Finally, Melissa Zielaskiewicz from the Bureau of Criminal Investigations was permitted to testify that DNA from appellant matched the DNA found on the doll.
 {¶ 30} While there was some testimony about the inflatable doll, the trial judge did not allow the doll to be admitted as an exhibit. Further, the doll was at least somewhat relevant because it was wearing a diaper, and T.S. testified that appellant made her wear a diaper while he took pictures of her, which showed that appellant associated diapers with sexual activity.
 {¶ 31} Regardless of whether the testimony was relevant, we review under a plain error standard because appellant's lawyer failed to object. Under such review, we cannot say that, absent mention of the doll, the case would have been decided differently. Here, T.S. testified, with specificity, regarding appellant's conduct with her. Her testimony alone is sufficient to convict appellant, but coupled with the testimony of the aunt and the social worker, it is clear that the outcome of the trial would have been the same with or without mentioning the doll. Accordingly, appellant's fourth assignment of error is overruled. *Page 12 
 Social Worker — Opinion and Veracity {¶ 32} "V. Appellant was denied a fair trial by the social worker's improper comments while testifying."
 {¶ 33} Appellant argues that the trial court erred when it allowed the social worker to testify about T.S.'s veracity. This argument is without merit.
 {¶ 34} As appellant correctly argues, in State v. Boston (1989),46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court held that, in child sexual abuse cases, an expert may not give her opinion as to the child's veracity. Further, in State v. Burrell (1993),89 Ohio App.3d 737, 627 N.E.2d 605, the court held that a physician's testimony that he believed the victim was molested was based solely on the victim's statements and, absent any other evidence of sexual abuse, was inadmissible. Finally, in State v. Knight, Cuyahoga App. No. 87737, 2006-Ohio-6437, this court reversed a defendant's conviction when a nurse practitioner testified that the child was abused because her opinion was not based on any medical or physical evidence.
 {¶ 35} In State v. Smelcer (1993), 89 Ohio App.3d 115,623 N.E.2d 1219, this court held that a social worker's determination that allegations are "indicated" is not considered testimony regarding veracity. In Smelcer, the social worker "was not asked nor did he express any opinion about [the victim's] veracity. * * * He did not say that he thought [the victim's] statements were credible, consistent, or truthful. [The social worker's] statement reflected his *Page 13 
agency's policy of classification of child abuse cases and not an assessment of [the victim's] credibility." Id.
 {¶ 36} Here, the social worker testified that she "substantiated sexual abuse of [T.S.] with David Sopko as the perpetrator." According to the social worker, the term "substantiated" is an "inter-departmental determination." We find that, under Smelcer, testifying that the abuse was "substantiated" is acceptable. We find it somewhat troublesome that the social worker went on to say that the abuse was substantiated "with David Sopko as the perpetrator." Appellant argues that this statement expresses the social worker's opinion as to T.S.'s veracity.
 {¶ 37} However, despite the troublesome nature of the social worker's comments, we must still review under a plain error standard because appellant's lawyer failed to object. Under such review, we cannot say that, absent this testimony, the case would have been decided differently. Here, T.S. testified, with specificity, regarding appellant's conduct with her. Her testimony alone is sufficient to convict appellant. Again, T.S.'s testimony, coupled with the testimony of the aunt and the social worker that the abuse was substantiated, makes it is clear that the outcome of the trial would have been the same with or without the social worker's mention of appellant as the perpetrator. Accordingly, appellant's fifth assignment of error is overruled.
 Sufficiency and Manifest Weight *Page 14 {¶ 38} "II. The state failed to present sufficient evidence to sustain a conviction against Appellant."
 {¶ 39} "III. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 40} Appellant argues that his rape convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. More specifically, he alleges that there is no physical evidence to corroborate T.S.'s story. This argument is without merit.
 {¶ 41} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A challenge of the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541.
 {¶ 42} Sufficiency of the evidence is subject to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence *Page 15 
independently of the fact-finder. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717.
 {¶ 43} The jury convicted appellant of two counts of rape. One count charged digital penetration, and the other count charged vaginal intercourse. Under R.C. 2907.02(A)(1)(b), "no person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age."
 {¶ 44} We find that, despite a lack of physical evidence, the state presented sufficient evidence of both counts of rape. T.S. testified that appellant put his finger inside her vagina, which hurt and made her sad. According to the social worker, T.S. told her that appellant "touches me with his hands and fingers and they go in." This testimony was sufficient to prove digital penetration. The social worker also testified that T.S. told her that in the shower, appellant's penis touched her vagina and it hurt when he "pushes it in too hard." This testimony was sufficient to establish vaginal intercourse.
 {¶ 45} In addition to T.S.'s testimony, the aunt testified that T.S.'s behavior began to change around the same time that the abuse began. For example, *Page 16 
while in the shower, T.S. asked the aunt to wash her like appellant did. Also, T.S. began touching herself inappropriately. Finally, the social worker testified that, using anatomical drawings, T.S. was able to draw a penis. After examining the evidence admitted at trial, we find that such evidence, if believed, would convince the average mind of appellant's guilt on two counts of rape beyond a reasonable doubt.
 {¶ 46} Appellant also argues that there was insufficient evidence to find him to be a sexually violent predator. This argument is without merit. R.C. 2971.01(H)(1), defines a sexually violent predator as a person who commits a sexually violent offense and is likely to do so again in the future. Appellant argues that "there simply was no evidence to justify or indicate that appellant was likely to engage in the future one or more sexually violent offenses." We disagree.
 {¶ 47} Under R.C. 2971.01(H)(2)(a), the trial court must consider whether the person has been convicted two or more times of a sexually oriented offense or a child-victim oriented offense; the person has a documented history from childhood that exhibits sexually deviant behavior; evidence suggests that the person chronically commits offenses with a sexual motivation; the person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims; the person has committed one or more *Page 17 
offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy; and any other relevant evidence.
 {¶ 48} Importantly, "there is no requirement that all of the factors * * * be proved in order to find a person to be a sexually violent predator. The statute specially notes that any of the factors may be considered as evidence that an individual is likely to engage in one or more sexually violent offenses." State v. Williams (Sept. 20, 2001), Cuyahoga App. No. 78999.
 {¶ 49} In this case, there was a myriad of other "relevant evidence" to support a finding that appellant is a sexually violent predator. The victim is appellant's own minor child, appellant had been convicted of two domestic violence charges in the past, and the sexual abuse had gone on for a significant period of time. Accordingly, we find that there was sufficient evidence to find that appellant was a sexually violent predator.
 {¶ 50} Appellant also argues that his rape convictions were against the manifest weight of the evidence. We cannot say that the jury clearly lost its way. The jury had the opportunity to hear T.S.'s testimony, in which she described the ways that appellant sexually abused her. T.S. was able to draw a penis and circle the areas on a body map where appellant touched her. T.S. told the aunt and the social worker what happened to her. After a review of the above evidence, we find that appellant's convictions are not against the manifest *Page 18 
weight of the evidence. Accordingly, appellant's second and third assignments of error are overruled.
 Closing Arguments {¶ 51} "VI. Appellant was denied his right to a fair trial due to the prosecutor's improper remarks during closing argument."
 {¶ 52} Appellant argues that he was denied a fair trial due to the prosecutor's improper remarks during closing argument. More specifically, he alleges that the prosecutor told the jury he believed that T.S.'s testimony was credible. This argument is without merit.
 {¶ 53} The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966),6 Ohio St.2d 14, 26, 215 N.E.2d 568, certiorari denied (1966), 385 U.S. 930,87 S.Ct. 289, 17 L.Ed.2d 212; State v. Liberatore (1982),69 Ohio St.2d 583, 589, 433 N.E.2d 561. However, the prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious, but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence that is before the jury. United States v. Dorr
(C.A.5, 1981), 636 F.2d 117.
 {¶ 54} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.Dorr, supra, at 120. It is improper *Page 19 
for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v.Thayer (1931), 124 Ohio St. 1, 176 N.E. 656; DR 7-106(C)(4) of the Code of Professional Responsibility.
 {¶ 55} Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,514 N.E.2d 394; State v. Papp (1978), 64 Ohio App.2d 203, 412 N.E.2d 401. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984),14 Ohio St.3d 13, 470 N.E.2d 883. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239,266, 473 N.E.2d 768; State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338.
 {¶ 56} The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87. In addition, should a defendant fail to object to the prosecutor's allegedly improper comments at trial, pursuant to Crim. R. 52(B), the comments in question must rise to the level of plain error affecting the substantial rights of the defendant before this court can take notice of the error. Under a plain error *Page 20 
analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial clearly would have been different. State v. Kent (1980), 68 Ohio App.2d 151,428 N.E.2d 453; State v. Parker (Oct. 5, 1995), Cuyahoga App. No. 68156.
 {¶ 57} In his closing argument, the prosecutor stated, "I submit to you, there was no story. The State of Ohio doesn't come before juries to present stories. We don't have time for that, ladies and gentlemen." The prosecutor's statements did not refer to any specific person's testimony, nor did they add facts or evidence not adduced at trial. Accordingly, appellant's sixth assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 58} "VII. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I of the Ohio Constitution and theSixth and Fourteenth Amendments of the United States Constitution when defense counsel failed to question the child during the competency hearing and failed to object to the child's competency, failed to object to hearsay testimony, failed to object to the admission of prejudicial, irrelevant evidence, failed to object to the prosecutor's questions and the social worker's opinion about whether sexual abuse was substantiated and how Appellant was the perpetrator, and failed to object to the prosecutor's improper closing arguments vouching for the alleged victim's credibility." *Page 21 
 {¶ 59} In support of his argument that he was denied effective assistance of counsel, appellant asserts several errors he believes were made by trial counsel. These arguments are without merit.
 {¶ 60} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 61} The Ohio Supreme Court held in State v. Bradley (1989),42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, that "`[w]hen considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' State v. Lytle (1976), *Page 22 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland [, supra].
 {¶ 62} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981).' Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice."
 {¶ 63} Appellant raises numerous instances in which he feels his lawyer's performance was deficient. We shall address each instance in turn.
 {¶ 64} Appellant alleges that his counsel was deficient when he failed to object to the trial court's finding that T.S. was competent to testify. He specifically alleges that the transcript of the competency hearing (pp. 11-12) indicates that T.S. was confused. *Page 23 
 {¶ 65} Under Evid. R. 601(A), "every person is competent to be a witness except: those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly. * * *."
 {¶ 66} The trial court must consider certain factors in determining whether a child under ten is competent. These factors include: "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he * * * will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what he observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his * * * responsibility to be truthful." State v. Frazier (1991), 61 Ohio St.3d 247, 251,574 N.E.2d 483.
 {¶ 67} A thorough review of the entire transcript shows that T.S. was competent; that she understood the importance of keeping a promise and telling the truth; that she understood she could be punished for lying; and that she had the ability to recall facts. T.S.'s answers showed that she knew her name, birthday, city, brother's name, that she could count to ten, and that she understood the difference between right and wrong. Specifically, she testified that it was wrong to lie and good to tell the truth. She knew that she would "get in trouble" for lying. The transcript clearly shows that T.S. was properly found competent to testify; therefore, trial counsel did not err by failing to object. *Page 24 
 {¶ 68} Appellant alleges that his counsel was deficient when he failed to object to the social worker's testimony regarding what T.S. told her. In appellant's first assignment of error, we found that the testimony was admissible; therefore, trial counsel did not err when he failed to object.
 {¶ 69} Appellant alleges that his counsel was deficient when he failed to object to the "other acts" testimony about the doll. In appellant's fourth assignment of error, we found that the court did not err in allowing this testimony. Also, defense counsel objected to the admission of the doll into evidence, and the trial judge agreed. In any event, as discussed in the fourth assignment of error, the outcome of the case would have been the same with or without this alleged other acts testimony; therefore, trial counsel was not ineffective for failing to object.
 {¶ 70} Appellant alleges that his counsel was deficient when he failed to object to the social worker's opinion that the abuse was "substantiated." In appellant's fifth assignment of error, we found that the testimony was admissible; therefore, trial counsel did not err when he failed to object.
 {¶ 71} Appellant alleges that his counsel was deficient when he failed to object to the prosecutor's closing arguments. In appellant's sixth assignment of error, we found that the closing remarks were proper; therefore, trial counsel did not err when he failed to object. *Page 25 
 {¶ 72} Because we have found no instance where trial counsel was deficient, we find that appellant had effective assistance of counsel. Accordingly, appellant's seventh assignment of error is overruled.
 Sexual Predator {¶ 73} "VIII. The evidence was insufficient, as a matter of law, to prove by `clear and convincing evidence' that defendant-appellant `is likely to engage in the future in one or more sexually oriented offenses' as required by Ohio Revised Code Section 2950.09(B)(4)."
 {¶ 74} Appellant argues that there was not sufficient evidence to prove by clear and convincing evidence that he is likely to sexually offend again. This argument is without merit.
 {¶ 75} A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). In determining whether an offender is a sexual predator, the court should consider all relevant factors, including but not limited to: the offender's age, prior criminal record regarding all offenses and sexual offenses, the age of the victim, previous convictions, number of victims, whether offender has completed a previous sentence, whether offender participated in treatment programs for sex offenders, mental illness of the offender, the nature of the sexual conduct, and any additional behavioral characteristics that contribute to the offender's *Page 26 
conduct. R.C. 2950.09(B)(2). After reviewing the factors, the court "shall determine by clear and convincing evidence" whether the offender is a sexual predator. R.C. 2950.09(B)(3).
 {¶ 76} In order to classify an offender as a sexual predator, the state must show that the offender is currently likely to commit a sex crime in the future, not solely that he committed a sex crime in the past. This court recently stated that "a court may adjudicate a defendant a sexual predator so long as the court considers `all relevant factors[,]' which may include a sole conviction." State v. Purser,153 Ohio App.3d 144, 2003-Ohio-3523, 791 N.E.2d 1053, citing State v.Ward (1999), 130 Ohio App.3d 551, 560, 720 N.E.2d 603.
 {¶ 77} In making the classification, the court may consider statistical studies and diagnostic tests to determine the risk of reoffending. Statistically, the rate of recidivism for pedophile offenders is high. See McKune v. Lile (2002), 536 U.S. 24, 32-33,122 S.Ct. 2017, 153 L.Ed.2d 47; State v. Eppinger, 91 Ohio St.3d 158,159-162, 2001-Ohio-247, 743 N.E.2d 881. A court may consider this increased risk and is "free to give due deference to the statistical likelihood of the appellant re-offending notwithstanding the standardized testing that indicated he was a low risk to re-offend."Purser, supra.
 {¶ 78} The likelihood to commit a sexual offense in the future must be shown by clear and convincing evidence. This standard requires more than a "preponderance of the evidence, but not to the extent and certainty as is required *Page 27 
beyond a reasonable doubt in criminal cases." State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, citing Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118. The evidence must be enough to support a firm belief or conviction.
 {¶ 79} When determining whether a person is a sexual predator, the court must consider all relevant factors, including those listed in R.C. 2950.09(B)(2). The statute does not require the court to list the criteria, but only to consider all relevant factors, including the criteria in R.C. 2950.09(B)(2), in making his or her findings. SeeState v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, 700 N.E.2d 570.
 {¶ 80} In making its determination to classify appellant as a sexual predator, the trial court considered the victim's young age; appellant's prior criminal record, which included two domestic violence convictions; the parent/child relationship between appellant and T.S.; the fact that appellant was convicted of two counts of rape; appellant's admission in the presentence investigation that the crimes happened when he "zoned out"; and appellant's lack of remorse. A review of these factors shows that the trial court appropriately determined, by clear and convincing evidence, that appellant was a sexual predator. Accordingly, appellant's eighth assignment of error is overruled.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 28 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., CONCURS
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE OPINION
[1] Pursuant to this court's established policy, the identity of the victims is shielded; therefore, they and their family members are referred to herein by their initials only.
[2] At trial, T.S. referred to both her vagina and appellant's penis as "goongie"; however, for purposes of this opinion, we shall use the terms "vagina" and "penis."