The STATE of Ohio, Appellee,

v.

BROOKS, Appellant.

[Cite as *State v. Brooks*, 186 Ohio App.3d 694, 2009-Ohio-3286.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91730.

Decided July 2, 2009.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Brian M. McDonough, Assistant Prosecuting Attorney, for appellee.

Michael P. Maloney, for appellant.

ANN DYKE, Judge.

{¶ 1} Defendant-appellant, Hugh Brooks, appeals from his convictions for gross sexual imposition and kidnapping. For the reasons set forth below, we reverse

the judgment and remand the matter to the trial court to vacate defendant's convictions.

{¶ 2} On December 21, 2007, defendant was indicted on three counts of gross sexual imposition upon A.B., a child under the age of 13 (age three), with a sexually-violent-predator specification, and one count of kidnapping of a child under the age of 13, with sexual motivation and sexually-violent-predator specifications. Defendant pleaded not guilty, and the charges proceeded to a jury trial on March 11, 2008. The sexually-violent-predator specification was tried to the court, however.[1]

{¶ 3} The state presented the testimony of the child's mother, maternal grandmother, paternal grandmother, and father, nurse Nanci Hedberg, social worker Amy Houk, Lakewood Police Officer William McCarthy, and Detective Larry Kirkwood.

{¶ 4} The mother testified that defendant is her former boyfriend and that A.B. is her son. The paternal grandmother has custody of A.B., and at the time of the events at issue, the mother and defendant lived in the upstairs of a house and the maternal grandmother lived downstairs. Because the upstairs bathroom is not functional, the mother, defendant, and A.B. used the downstairs bathroom, the door to which did not have a lock. The mother further testified that she sometimes bathed A.B. by putting him in the bath with her.

{¶ 5} On Thursday, November 1, 2007, the paternal grandmother dropped A.B. off for a weekend visit with his mother. The following day, A.B.'s mother was scheduled to take a placement test at Cuyahoga Community College. She had a migraine and asked defendant and the maternal grandmother to watch A.B. so she could take a nap. When she awoke hours later, A.B. was dressed in play clothes and no longer wearing pajamas.

{¶ 6} The maternal grandmother testified that she awoke from a nap and heard water running in the bathroom. She next heard A.B. tearfully saying, "No, no, no, no, no." The maternal grandmother knocked on the unlocked door and asked what was going on. Defendant replied, "We're taking a bath, mama." About a minute later, A.B. walked out of the bathroom wrapped in a towel and defendant followed, wearing jeans, a shirt, and no shoes or socks. Defendant's hair was wet, a wet towel was hanging in the bathroom, and toys were in the tub. Defendant, A.B., and his mother left the apartment a few minutes later.

{¶ 7} That night, the mother and A.B. stayed with a friend and slept on an air mattress. When they awoke, A.B. had diaper rash, so she gave him a bath.

---

1. The judgment entry erroneously indicates that defendant was convicted of this specification by the jury. However, an earlier journal entry and the transcript both indicate that defendant was found not guilty of the specification by the court.

When they returned home on Monday morning, the owner of the apartment complained that the mother had not paid her rent and ordered her to leave. The police were summoned and were present when the paternal grandmother arrived to pick up A.B.

{¶ 8} The paternal grandmother testified that A.B. was upset and thought that the maternal grandmother had to go to jail. A.B. later complained of a headache, did not have an appetite, and screamed during the night. The following morning, the paternal grandmother took A.B. to the emergency room at St. John West Shore Hospital. According to the paternal grandmother, A.B. winced in pain when the doctor examined his shoulder area and the doctor determined that those muscles were tense.

{¶ 9} The paternal grandmother subsequently spoke to her son and to the maternal grandmother. As a result of this communication, the paternal grandmother picked A.B. up from daycare and questioned him as to whether he had taken a bath with defendant and whether defendant had touched him. According to the paternal grandmother, A.B. said that he had taken a bath with defendant and that defendant touched him on the "butt" and "pee pee" and made him touch the defendant's "butt."

{¶ 10} The paternal grandmother took A.B. back to the St. John West Shore emergency room. Hospital personnel instructed her to take him to Fairview Hospital. She then informed a nurse at Fairview of what A.B. had said about the defendant. She admitted that A.B. had no redness or soreness anywhere on his body at this time. She further admitted on cross-examination that in her police statement, she additionally reported that A.B. had said that his mother was present during the inappropriate touching and that defendant touched his mother on her "butt." The paternal grandmother additionally admitted to telling the police that A.B. told a nurse that a "snake licked and kissed his belly and down there at his mommy's house." The nursing notes indicate only that A.B. was asked to point out his belly button and he said "it's a snake. It kisses me on my belly." There is no mention of licking or "down there." Later, the paternal grandmother informed the police that "[s]ince the time I've made this report, [A.B.] says he was not touched in a bathroom, but a room. His mother was not there."

{¶ 11} Nurse Nanci Hedberg testified that A.B. was brought in for suspected child abuse from six days earlier and that behavioral changes were reported by the paternal grandmother. Physical findings were normal. Nurse Hedberg further testified that during the examination, she asked A.B. where his belly button was and he stated, "It's a snake. It kisses me on my belly." He did not answer her questions regarding the snake, then changed the subject. The written report likewise states that A.B. said that the "snake kisses me on my

belly" and did not, as the paternal grandmother had maintained, indicate that he said that it kissed or licked him "down there."

{¶ 12} Lorain County Children Services social worker Amy Houk testified that she interviewed A.B. at the Child Advocacy Center in Lorain. In the videotaped interview, she showed him anatomical drawings and talked to him about who can and cannot touch his body. According to this witness, A.B. was not comfortable talking about these subjects and repeatedly stated that no one had improperly touched him. Houk then interviewed A.B. at the paternal grandmother's house. During this interview, A.B. said that "the monster touched his pee pee and butt" and that the monster lived at his mother's house. Houk also observed the police interrogation of the defendant. At the close of her investigation, Houk reported that there was "indicated sexual abuse * * * but there is no evidence to back it up."

{¶ 13} Detective Kirkwood testified that he interviewed the defendant on November 15, 2007. According to this witness, at the start of the interview and before the detective began his questioning, defendant stated that A.B. sees monsters in the toilet and that is why he soils his pants. Det. Kirkwood stated that soiling can be indicative of abuse and that he found the remark to be unusual. Defendant also referred to A.B.'s mother as his fiancée, but he acknowledged that he had not actually asked her to marry him. Defendant admitted that he had taken two baths with A.B. During the first, the mother was bathing A.B. and defendant walked into the room. At this time, A.B. asked defendant to get into the tub, the mother agreed, and remained in the room the entire time. During the second instance, which the maternal grandmother overheard, defendant stated that he washed A.B. with a sponge and did not inappropriately touch him. The detective noted that defendant was nervous and shaking. Defendant denied being sexually abused as a child but stated that his father had abused a brother.

{¶ 14} The jury convicted defendant of all charges, and the trial court acquitted him of the sexually-violent-predator specifications. The trial court sentenced defendant to four years of imprisonment and ten years of community control sanctions.[2] The trial court also determined that defendant is a Tier II sex offender in connection with the gross-sexual-imposition convictions and a Tier III offender as to the kidnapping conviction. Defendant now appeals and assigns six errors for our review.

---

2. This maximum time period for all community-control sanctions is not to exceed five years, pursuant to R.C. 2929.15. In light of our disposition of this case, however, the error is without effect.

{¶ 15} In the fourth assignment of error, defendant contends that the trial court erred in permitting admission of the child's hearsay statement to his grandmother. The trial court ruled that the statements were admissible pursuant to Evid.R. 803(4), statements made for the purposes of medical diagnosis or treatment.

{¶ 16} Evid.R. 803 provides:

{¶ 17} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶ 18} "(4) Statements for purposes of medical diagnosis or treatment.

{¶ 19} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶ 20} The Staff Notes explain:

{¶ 21} "The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted."

{¶ 22} In child-abuse cases, hearsay testimony is admissible, even from nonmedical personnel under Evid.R. 803(4), as long as those statements were made in the course of physical or psychological treatment. *State v. Sopko*, Cuyahoga App. No. 90743, 2009-Ohio-140, 2009 WL 97705, citing *State v. McWhite* (1991), 73 Ohio App.3d 323, 597 N.E.2d 168, and *State v. Chappell* (1994), 97 Ohio App.3d 515, 646 N.E.2d 1191.

{¶ 23} The rationale behind the medical-diagnosis exception is the "selfish-interest rationale" or the belief that a person will tell the truth when seeking medical diagnosis or treatment because the person's well-being might depend on it. *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436; see also *In re Corry M.* (1999), 134 Ohio App.3d 274, 281, 730 N.E.2d 1047. In *Dever*, the Supreme Court relaxed this requirement as applied to children. The court recognized that although a child would generally be sent for treatment by an adult, the child's statements relating to medical diagnosis or treatment are not untrustworthy for that reason alone.

{¶ 24} Nonetheless, the test for admissibility under Evid.R. 803(4) is whether the statements are reasonably relevant to "diagnosis or treatment." *State v. Miller* (1988), 43 Ohio App.3d 44, 46, 539 N.E.2d 693. Thus, "[i]f the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of

diagnosis or treatment." *State v. Dever*, at 410, 596 N.E.2d 436. The court explained:

{¶ 25} "For example, the trial court may consider whether the child's statement was in response to a suggestive or leading question * * * and any other factor which would affect the reliability of the statements * * *. If no such factors exist, then the evidence should be admitted. The credibility of the statements would then be for the jury to evaluate in its role as factfinder. In addition, the witness whose testimony brings in the child's hearsay statement can be cross-examined about the circumstances surrounding the making of the statement. But if the trial court discerns the existence of sufficient factors indicating that the child's statements were not made for the purpose of diagnosis or treatment, the statements must be excluded as not falling within Evid.R. 803(4)." Id. at 410–411, 596 N.E.2d 436; accord *State v. McCollum* (Apr. 14, 1989), Sandusky App. No. S–88–15, 1989 WL 35502.

{¶ 26} In *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, the court provided a nonexhaustive list of factors to be considered in determining whether a child's statements are admissible under Evid.R. 803(4), including (1) whether the child was questioned in a leading or suggestive manner, (2) whether there is a motive to fabricate, and (3) whether the child understood the need to tell the physician the truth. Id. at 14–15, 2007-Ohio-5267, 875 N.E.2d 944. "In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of her declarations." Id. at 15, 2007-Ohio-5267, 875 N.E.2d 944.

{¶ 27} In this matter, the testimony at issue occurred during the paternal grandmother's testimony on direct examination and is as follows:

{¶ 28} "Q. After you have this additional information from [her son and his new girlfriend] what did you ask [A.B.]?

{¶ 29} "A. I asked [A.B.] did he take a bath when he was at his mom's house.

{¶ 30} "Q. Did [A.B.] give you an answer?

{¶ 31} "A. He said yes.

{¶ 32} "Q. What else did you ask [A.B.]?

{¶ 33} "A. I asked [A.B.] if he took a bath with mommy's boyfriend.

{¶ 34} "Q. Did [A.B.] give you an answer?

{¶ 35} "A. He said yes.

{¶ 36} " * * *

{¶ 37} "Q. What else did you ask [A.B.]?

{¶ 38} "A. I asked if mommy's boyfriend touched him.

{¶ 39} "A. Did [A.B.] give you an answer?

{¶ 40} "A. Yes.

{¶ 41} "Q. What was the answer?

{¶ 42} " * * *

{¶ 43} "A. He said yes, he touched my butt and my pee pee and he made me touch his butt."

{¶ 44} Here, the statements at issue were made to the paternal grandmother in connection with her inquiry regarding what had happened in the bathroom. They were not made for the purpose of medical diagnosis or treatment and are not reasonably pertinent to diagnosis or treatment. Moreover, her questions were clearly leading and are completely inconsistent with other statements in the record in which A.B. denied that abuse occurred. They are also in conflict with A.B.'s other alleged statements that his mother was present during inappropriate touching, which occurred in a different room. In accordance with all of the foregoing, we hold that the trial court erred in deeming them admissible under Evid.R. 803(4).

{¶ 45} Moreover, although the paternal grandmother claimed that in making this statement, A.B. "was more animated than I had seen him since he came home, very excited, blurting it out, like he couldn't wait to get it out," the statement is not admissible as an excited utterance under Evid.R. 803(2). In order to be admissible under this rule, (1) an event startling enough to produce a nervous excitement in the declarant must occur, (2) the statement must have been made while the declarant still is under the stress of excitement the event caused, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. See *State v. Taylor* (1993), 66 Ohio St.3d 295, 612 N.E.2d 316. The court also should consider the lapse of time between the event and the statement, the mental and physical condition of the declarant, the nature of the statement, and the influence of intervening circumstances. *State v. Harrison*, Franklin App. 06AP–827, 2007-Ohio-2872, 2007 WL 1674008, citing *State v. Patterson* (May 22, 1998), Trumbull App. No. 96–T–5439, 1998 WL 310737. See also Staff Notes to Evid.R. 803(2).

{¶ 46} In this matter, the hearsay statement of A.B. was made days after the bath incident. It was not spontaneous but was made in response to leading questions. It was also made after the paternal grandmother had other conversations with A.B. about the weekend, and after the initial emergency room visit. Further, although A.B. allegedly "blurted it out," the record does not support the claim that he was in a state of "nervous excitement" from the alleged incident. Moreover, the statement was contradictory to A.B.'s other statements involving

his mother and was contradictory to his denials of inappropriate touching. *State v. Brown,* Portage App. No.2007–P–0014, 2008-Ohio-832, 2008 WL 553247.

{¶ 47} This assignment of error is well taken.

{¶ 48} Defendant's first and second assignments of error are interrelated and state:

{¶ 49} "The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of gross sexual imposition.

{¶ 50} "The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of kidnapping."

{¶ 51} Crim.R. 29(A) provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶ 52} A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394; *State v. Jordan* (Feb. 14, 2002), Cuyahoga App. Nos. 79469 and 79470, 2002 WL 232879. The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. *State v. Turner,* Franklin App. No. 04AP–364, 2004-Ohio-6609, 2004 WL 2830785, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins,* supra.

{¶ 53} Gross sexual imposition, as it relates to victims under 13 years old, is defined in R.C. 2907.05(A) as follows: "No person shall have sexual contact with another * * * whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact," in general, as a touching of an erogenous zone, for purpose of arousing or gratifying either person.

{¶ 54} Kidnapping, as it relates to victims under the age of 13, is defined in R.C. 2905.01(A)(2) and (4) as follows: "No person * * * shall remove another from the place where the other person is found or restrain the liberty of the other

person, \* \* \* [t]o facilitate the commission of any felony \* \* \* [or][t]o engage in sexual activity \* \* \*."

{¶ 55} In this matter, as we noted previously, the trial court erred in admitting the paternal grandmother's hearsay statement that A.B. told her that defendant took a bath with him and that defendant touched his "butt" and "pee pee." Without this improper evidence, there is insufficient evidence to support the convictions. That is, the state's evidence indicated that A.B.'s mother took a nap and defendant and the maternal grandmother were to watch A.B. The maternal grandmother awoke from a nap, heard water running in the bathroom, and heard A.B. tearfully saying "No, no, no, no, no." The maternal grandmother knocked on the unlocked door and asked what was going on. Defendant replied, "We're taking a bath, mama." About a minute later, A.B. walked out of the bathroom wrapped in a towel, and defendant followed, wearing jeans and a shirt, no shoes or socks. Defendant's hair was wet, a wet towel was hanging in the bathroom, and toys were in the tub.

{¶ 56} The paternal grandmother testified that when she had A.B. a few days later, he complained of a headache, did not have an appetite, and screamed during the night. She then took A.B. to the emergency room, and he winced in pain when the doctor examined his shoulder area. Later, during the examination at Fairview General Hospital, no redness or soreness was noted, and the physical findings were normal. Although the paternal grandmother told the police that while at Fairview General Hospital, A.B. told a nurse that a "snake licked and kissed his belly and down there at his mommy's house," the actual nursing notes indicate only that A.B. was asked to point out his belly button and he said, "It's a snake. It kisses me on my belly." Social worker Amy Houk testified that in her videotaped interview, A.B. repeatedly stated that no one had improperly touched him. At a second home interview, A.B. said that "the monster touched his pee pee and butt" and that the monster lived at his mother's house. He said that the snake was not a body part, however. She also observed the police interrogation of the defendant. At the close of her investigation, Houk reported that there was "indicated sexual abuse \* \* \* but there is no evidence to back it up."

{¶ 57} In his interview with the police, defendant spontaneously stated that A.B. sees monsters in the toilet and that is why he soils his pants. Defendant also admitted that he had taken two baths with A.B. During the first, the child's mother was bathing A.B., and defendant walked into the room. At this time, A.B. asked defendant to get into the tub, and the mother agreed and remained in the room the entire time. During the second instance, which the maternal grandmother overheard, he stated that he washed A.B. with a sponge and did not inappropriately touch him.

{¶ 58} Viewing this evidence in a light most favorable to the prosecution, no rational finder of fact could have concluded that defendant had sexual contact with the victim. The conviction for gross sexual imposition is therefore supported by insufficient evidence. Further, viewing the evidence in a light most favorable to the prosecution, no rational finder of fact could have concluded that defendant removed A.B. from the place where he was found or restrained his liberty to facilitate the commission of any felony or to engage in sexual activity. The conviction for kidnapping is likewise supported by insufficient evidence.

{¶ 59} These assignments of error are well taken.

Judgment reversed
and cause remanded.

McMONAGLE, P.J., and STEWART, J., concur.